IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,         )
                                  )
     vs.                          )  Criminal No. 05-06
                                  )
HOWARD HAWKINS                    )

MEMORANDUM

Gary L. Lancaster,
District Judge.                                      December 27, 2005

Defendant, Howard Hawkins, asks the court to suppress a .40 caliber Smith & Wesson handgun that was seized by a City of Pittsburgh Police Officer, from a red Dodge Durango, in which he was a passenger, on January 4, 2004. Defendant has standing to present this motion. The principal issue presented by defendant is whether the officers violated his Fourth Amendment rights when they stopped the vehicle, removed the occupants, and searched the vehicle.

Defendant contends that the police officers arrested him and searched his car without probable cause and, thus, violated his Fourth Amendment rights. Accordingly, defendant argues that the firearm should be suppressed. The government opposes the motion contending that the officers had a reasonable suspicion of criminal activity and, therefore, were legally entitled to stop the vehicle. The government further contends that the officers did not arrest the defendant but rather

removed him from the car and detained him incident to a lawful stop of the vehicle. The government argues that, when the officers removed the defendant from the vehicle, they saw the firearm in plain view on the floor of the vehicle.

The court has considered the evidence introduced at the suppression hearing held on December 19, 2005, and is prepared to rule. For the following reasons, defendant's motion to suppress is denied.

I.   FINDINGS OF FACT

The credible evidence introduced at the hearing establishes the following:

On January 4, 2004, at 3:30 a.m. the City of Pittsburgh police received a report of shots being fired at 918 California Avenue. Within two or three minutes, City of Pittsburgh Police Officer Richard Zett responded to the report. At the scene, he observed spent shell casings on the ground. While Officer Zett was collecting the shell casings, he was approached by an individual, later identified as Thomas Gorgone, who told Officer Zett that, at 3:25 a.m., he was at the United States Post Office at 901 California Avenue retrieving his mail when he heard multiple gun shots. After he heard the gunshots, Mr. Gorgone observed a black male, approximately 5 feet 4 inches tall, of medium build, and wearing dark clothing running away from the

area of 918 California Avenue toward "B" Street.  Mr. Gorgone told Officer Zett that he observed the individual get into the front passenger seat of a red Dodge Durango.  Mr. Gorgone told Officer Zett that the red Dodge Durango turned onto California Avenue and proceed toward Marshall Avenue.  Officer Zett relayed this information to other police officers in the area.  He also advised them that the individual may be armed with a .40 caliber handgun.

While talking to Mr. Gorgone, Officer Zett was approached by Susan Williams.  Ms. Williams stated that she lived at 918 California Avenue, and all occupants were unharmed.  She told Officer Zett that, around 3:25 a.m. on January 4, 2004, she was laying on the couch in the living room of 918 California Avenue when she heard the sound of gunshots and saw the glass in her front window shatter.  Ms. Williams told Officer Zett that there were bullets in the ceiling of her living room.  Officer Zett later saw bullet holes in the front windows of Ms. Williams' apartment and bullets in the ceiling of Ms. Williams' living room.

City of Pittsburgh Police Officers Polly and Douglas also responded to the report of gunshots at 918 California Avenue on January 4, 2004.  Shortly after 3:30 a.m., while on their way to the location, Officers Polly and Douglas heard Officer Zett's

radio dispatch that an individual at the scene had gotten into a red Dodge Durango.  The red Dodge Durango was then seen driving towards Marshall Avenue.  The officers then drove on Brighton Road toward Marshall Avenue.  Within five minutes after hearing the radio dispatch, the officers saw a red Dodge Durango on Brighton Road and stopped the car at the intersection of Marshall Avenue and Brighton Road.  After more officers arrived, they found three individuals, including defendant, in the vehicle.  The defendant was in the front passenger's seat.  The officers ordered all three individuals to show their hands and ordered them out of the vehicle.  The police officers placed all three in handcuffs, patted them down, and then placed them in separate police cars.

After removing the individuals from the vehicle, Officer Douglas returned to the red Dodge Durango.  Officer Douglas testified that both front doors were open.  Defendant testified that the car doors were all closed.  The court finds defendant's testimony on this point to be more credible.  Thus, the court finds, Officer Douglas, or another officer on the scene, must have opened the car doors.

Officer Douglas used his flashlight to look into the car and saw a black and silver .40 caliber Smith & Wesson handgun partially visible under the driver's seat.  Officer Douglas

4

further saw a magazine partially visible under the front passenger's seat. A .9 mm Jennings Nine handgun was also discovered on top of a orange purse on the floor of the vehicle, between the second and third row of seats.

II.   STATEMENT OF REASONS

The Fourth Amendment to the United States Constitution prohibits the government from conducting "unreasonable searches and seizures" of individuals. U.S. Const. amend. IV. Except under limited circumstances, warrantless searches and seizures are per se unreasonable under the Fourth Amendment. United States v. Ross, 456 U.S. 798, 824-25 (1982). Evidence obtained during the course of an unreasonable search and seizure can be suppressed and not admitted at trial. Wong Sun v. United States, 371 U.S. 471 (1963).

A.   The Terry Stop

It is well established, that "an officer may...conduct a brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000)(quoting Terry v. Ohio, 392 U.S. 1 (1968)). Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Id. at 120. The Supreme Court has explained that "reasonable suspicion is a less

demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."  Alabama v. White, 446 U.S. 325, 330 (1990).  In determining whether the officers had reasonable suspicion in this case, the court must examine the "totality of the circumstances." United States v. Sokolov, 490 U.S. 1, 8 (1989)(quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).  Officers can base their reasonable suspicions on information offered by another person.  Adams v. Williams, 407 U.S. 143, 147 (1972).

Prior to conducting the stop, Officers Polly and Douglas had information which gave rise to a reasonable suspicion that the individuals in the car were involved in the shooting on California Avenue on January 4, 2004.  Specifically, Officers Polly and Douglas acted upon Officer Zett's report that a witness saw an individual leave a location where gunshots were fired, and enter a red Dodge Durango.  Further, the officers saw the car within minutes after hearing Officer Zett's report, in a location fairly close to California Avenue.  Thus, based upon the evidence

presented at the hearing, the court finds that the initial stop was lawful.[1]

    B. <u>The Investigatory Detention and Protective Search</u>

Defendant contends that, regardless of the lawfulness of the initial stop, the police officers, by their conduct, converted the "Terry" stop into an arrest without probable cause.

The court of appeals has held that when making an investigatory stop, police officers "may take such steps as are 'reasonably necessary to maintain the status quo during the course of the stop.'" <u>United States v. Edwards</u>, 53 F.3d 616, 618 (3d Cir. 1995)(quoting <u>United States v. Hensley</u>, 469 U.S. 221, 235 (1985)). The court of appeals has held that "there is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest." <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1193 (3d Cir. 1995). Rather, "the reasonableness of the intrusion is the touchstone, balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's actions to his

---

[1] At the suppression hearing, defendant's attorney stated that defendant conceded that the initial stop was valid. Defendant then challenged the validity of the stop in his brief. See Defendant's Memorandum of Law in Support of Motion to Suppress at p. 4, note 1. Regardless, the court finds based upon the totality of the circumstances that the initial stop was lawful.

reasons for stopping the suspect." Untied States v. Edwards, 53 F.3d at 618.

It is also well established that a "police officer executing such a [Terry] stop may exercise reasonable superintendence over the car and its passengers." United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004). The court of appeals has held that the officer may additionally "pat down the occupants of the vehicle and conduct a search of the passenger compartment, if he has a reasonable suspicion that the occupants might be armed and dangerous." Id. (citing Michigan v. Long, 463 U.S. 1032, 1049-50 (1983)).

Here, the evidence establishes that the officers acted reasonably when they ordered the defendant out of the vehicle, handcuffed him and then placed him in a squad car. The officers had sufficient credible information that the occupants of the vehicle were involved in a shooting. Thus, it was reasonable for the officers to suspect that defendant had a gun in the car. Based upon this suspicion, it was reasonable for the officers to order the defendant out of the car and to conduct a limited search of the passenger compartment of the vehicle.

### III.   CONCLUSION

The government has sustained its burden of proof in this instance. The credible evidence establishes that

defendant's Fourth Amendment rights were not violated on January 4, 2004. Accordingly, defendant's motion to suppress is DENIED.

BY THE COURT:

_____, J.

cc: All Counsel of Record